UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAMEKA JACKSON,

    Plaintiff,

v.        Case No. 8:17-cv-2361-T-CPT

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security,

    Defendant.
_____/

## **ORDER**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1980, has a limited education, and no past relevant work experience. (R. 23). In November 2013, she applied for SSI, alleging disability as of November 1, 2008, due to asthma, bipolar disorder, anxiety, and intellectual difficulties. (R. 181-87, 240). The Social Security Administration (SSA) denied her application both initially and on reconsideration. (R. 67, 94).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on July 26, 2016. (R. 33-65). During the course of that hearing, the Plaintiff's attorney raised the matter of the Plaintiff's intellectual functioning, noted the lack of testing (including IQ testing) regarding the same in the record, and requested that such testing be completed. (R. 40-42). Although the ALJ took the matter under advisement (R. 42), no IQ or other intellectual testing was subsequently ordered.

In a decision dated November 29, 2016, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since her application date on November 25, 2013; (2) had the severe impairment of asthma, obesity, and borderline intellectual functioning; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments, including—of significance here—the listing for intellectual disability;[1] (4) had the residual functional capacity (RFC) to perform light work with some additional limitations; and (5) could perform jobs that exist in significant numbers in the national economy. (R. 15-24). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 24).

---

[1] A claimant whose impairment meets one of the listed impairments is considered disabled without consideration of the claimant's age, education, and work experience. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Here, in addition to finding that the Plaintiff did not meet the listing for intellectual disability, the ALJ determined that she did not meet the listing for asthma. The latter finding is not challenged on appeal.

The Appeals Council denied the Plaintiff's request for review. (R. 1-5). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a); 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given his or her RFC, age, education, and work

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty*, 245 F.3d at 1280).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Although no deference is given to the Commissioner's legal conclusions, her findings of fact "are conclusive if they are supported by 'substantial evidence.'" *Doughty*, 245 F.3d at 1278 (quotation and citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew,

4

make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

III.

The Plaintiff's sole argument on appeal is that the Commissioner "failed to fully and adequately consider, weigh, or develop all of the evidence." (Doc. 19 at 2). More particularly, the Plaintiff claims that, given her diagnosis of borderline intellectual functioning and the absence of any IQ scores in the record, the ALJ was obligated to develop the record concerning her IQ and should have ordered a consultative examination (CE) on the matter. *Id.* at 5-7.

In response, the Commissioner submits that IQ testing was unnecessary for the ALJ to make an informed decision regarding the Plaintiff's disability and that, in any event, the Plaintiff has failed to show prejudice resulting from the lack of such testing. (Doc. 20).

Upon a thorough review of the record and the parties' submissions, the Court finds that the ALJ's failure to order IQ testing amounts to error requiring reversal and remand for further consideration of whether the Plaintiff's mental impairments met or equaled the severity of the listing for intellectual disability.

The Court begins its analysis with the well-settled principle that Social Security proceedings are by their nature inquisitorial, rather than adversarial. *Washington*, 906 F.3d at 1364; *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). As such, while a claimant ultimately bears the burden of proving that she is disabled and must produce adequate evidence to support her claim, an ALJ has a

firmly-established duty to develop a full and fair record of the facts relevant to the claimant's application for benefits. *Washington*, 906 F.3d at 1364; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (citation omitted). The Eleventh Circuit has described this duty as "an onerous task," which demands that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Washington*, 906 F.3d at 1364 (citation omitted).

Of relevance here, this duty requires an ALJ to order a CE under certain circumstances.[4] Indeed, it is reversible error for an ALJ not to order a CE when such an evaluation is "necessary for [the ALJ] to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted). Case law in this Circuit, however, requires a plaintiff to show some prejudice before remand to the Commissioner for further development is ordered. *Henry*, 802 F.3d at 1267. In considering whether such remand is required, the court is guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id.*

In this case, the lack of development of the record about which the Plaintiff complains relates to her qualification as intellectually disabled under Listing 12.05. To meet that listing, a claimant must satisfy both the diagnostic description in the introductory paragraph and one of four sets of diagnostic criteria found in paragraphs A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Listing 12.05's

---

[4] The regulations set forth a non-exhaustive list of situations that may require a CE, including where the additional evidence needed is not contained in the records of claimant's medical sources. 20 C.F.R. §§ 404.1519a(b)(1)-(4), 416.919a(b)(1)-(4).

introductory diagnostic description requires the claimant to have: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive behavior; and (3) an onset of impairment before age 22. *Id.* at § 12.05.

> Paragraphs A, B, C, or D in turn are satisfied by:
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

*Id.*

The applicable regulations provide that "[s]tandardized intelligence test results are *essential* to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A." *Id.* at § 12.00D(6)(b) (emphasis added). Moreover, under Eleventh Circuit case law, a person's IQ is presumed to remain constant throughout life. *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001). As a result, a valid IQ score meeting the listing criteria creates a rebuttable presumption that

the condition manifested itself before age twenty-two. *See Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 796 (11th Cir. 2017) (quoting *Hodges*, 276 F.3d at 1268). An IQ score, however, does not have to be conclusive of intellectual disability where such "is inconsistent with other evidence in the record on the claimant's daily living activities and behavior." *Id.* (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)).

Here, as noted, the Plaintiff specifically raised the issue of her intellectual disability at the hearing before the ALJ and asked for further development of the record in the form of a CE for IQ testing. (R. 40-42). As also noted, although the ALJ agreed to take the Plaintiff's request under consideration, *id.*, the record does not reflect that any subsequent IQ testing was ordered or conducted. Notably, despite finding in his decision that the Plaintiff had the severe impairment of borderline intellectual functioning, the ALJ determined that she did not meet the paragraph B or C criteria of Listing 12.05. The ALJ based this determination upon the absence of any "results of IQ testing . . . in the medical record," as well as the fact that the examining psychologist, Dr. Fred L. Alberts, "did not provide any test results to support his determination" as to the Plaintiff's intellectual capacity. (R. 17).

This was error. Given the lack of IQ scores in the record, the ALJ could not have made an "informed decision" as to whether the Plaintiff met the paragraph B or C criteria of the listing. Indeed, the ALJ seems to acknowledge as much, dismissing the Plaintiff's qualification under those paragraphs due to the mere lack of IQ scores.

The Commissioner attempts to resuscitate the ALJ's consideration of the Plaintiff's intellectual disability by arguing that she has failed to meet her burden of showing deficits in adaptive functioning, as required by the introductory paragraph of Listing 12.05. The Court, however, must rely on what the ALJ said, not on *post-hoc* arguments tendered by the Commissioner on appeal. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Notwithstanding the Commissioner's contentions, the ALJ's decision does not discuss whether the Plaintiff's behaviors, daily activities, or education contradict adaptive functioning deficits. Rather, noting that the Plaintiff had borderline intellectual functioning, it appears that the ALJ impliedly accepted that the Plaintiff had deficits in her adaptive functioning. *See* (R. 16-17) (acknowledging that "[b]orderline intellectual functioning refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . ."). As such, the Court cannot agree with the Commissioner that substantial evidence supports the ALJ's purported finding that the Plaintiff's adaptive functioning precluded her from meeting Listing 12.05.[5]

The Court also finds that, contrary to the Commissioner's assertions, the lack of IQ testing resulted in clear prejudice to the Plaintiff, who was, by the ALJ's own admission, borderline intellectually impaired. By the Court's consideration, such

---

[5] The Court acknowledges that, in making his credibility determination at step four, the ALJ found that the Plaintiff was coherent and able to respond to questions without undue delay, which he found indicative of "adequate adaptive functioning." (R. 22). This statement, however, is insufficient to remedy the problems with the ALJ's step-three finding outlined herein.

circumstances create an obvious evidentiary gap in the record with respect to the Plaintiff's intellectual abilities that the ALJ was duty-bound to fill or otherwise resolve.[6] *See Mosley v. Colvin*, No. CV 314-071, 2015 WL 5877847, at *6 (S.D. Ga. Sept. 9, 2015), *report and recommendation adopted*, No. CV 314-071, 2015 WL 5838493 (S.D. Ga. Oct. 5, 2015) (reversing Commissioner's decision for failure to develop record on the matter of plaintiff's IQ).

IV.

For the foregoing reasons, it is hereby ORDERED:

1) The Commissioner's decision is REVERSED and REMANDED for further consideration consistent with this Order.

2) The Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case.

3) The Court reserves jurisdiction on the matter of attorney's fees and costs pending further motion.

DONE and ORDERED in Tampa, Florida, this 28th day of February 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

---

[6] If, on remand, there is a reason(s) why the ALJ finds IQ testing unnecessary to make an informed decision, the ALJ must explain why. As the record stands now, however, there is an evidentiary gap that must be addressed and resolved.